## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KABEYA BINTU,

      Plaintiff,

            v.

DELTA AIRLINES, INC. and
KONINKLIJKE LUCHTVAART
MAATSCHAPPIJ N.V. aka KLM ROYAL
DUTCH AIRLINES,

      Defendants.

Civil Action No.
1:19-cv-04775-SDG

### OPINION AND ORDER

This matter is before the Court on the Defendants KLM Royal Dutch Airlines ("KLM") and Delta Airlines, Inc.'s ("Delta") joint motion to dismiss for *forum non conveniens* [ECF 23]. For the following reasons, Defendants' motion is **GRANTED**.

## I.    BACKGROUND

The following facts are accepted as true for the purpose of this Order.[1] In 2018, Plaintiff Kabeya Bintu, a resident of Germany, purchased a roundtrip airline

---

[1]    *Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 544 (11th Cir. 1997) ("[I]t is appropriate that we construe the complaint in the light most favorable to plaintiffs. We will accept as true the complaint's well pleaded facts, even if disputed, but not its conclusions.") (citations omitted) (considering appeal of, *inter alia*, denial of Foreign Sovereign Immunities Act immunity and *forum non conveniens* motion).

ticket in Germany from Delta through its website.[2] As part of the roundtrip, Bintu's scheduled return on September 18, 2018 had him flying from Atlanta, Georgia to Amsterdam, The Netherlands, then to Munich, Germany.[3] For the flight from Atlanta to Amsterdam, KL0622/DL9375, KLM operated the flight by way of a joint venture agreement between Delta and KLM.[4] During the flight, a flight attendant pushed a beverage cart into Bintu's knee, allegedly causing him injury.[5] As a result, Bintu sought medical care in Germany, which led to a surgical procedure and physical therapy.[6]

On October 23, 2019, Bintu filed his Complaint, seeking to hold KLM and Delta jointly and severally liable for his injuries pursuant to the Montréal Convention.[7] KLM and Delta filed the instant motion to dismiss on February 3,

---

[2]   ECF 1, ¶ 6. According to the Complaint, Delta's principal place of business is in Atlanta, Georgia. *Id.* ¶ 2.

[3]   *Id.* ¶¶ 7–8.

[4]   *Id.* ¶ 9. According to the Complaint, KLM's principal place of business is in Amstelveen, Haarlemmermeer, The Netherlands. *Id.* ¶ 3. KLM operates in the United States and regularly does business in the State of Georgia. *Id.*

[5]   *Id.* ¶ 10.

[6]   *Id.* ¶ 13.

[7]   Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. TREATY DOC. No. 106–45, 1999 WL 33292734 (2000) (hereinafter "Montréal Convention").

2020, contending the Complaint should be dismissed pursuant to the doctrine of *forum non conveniens*.[8] Defendants argue this case should be adjudicated in a German court.[9] Bintu filed a response in opposition to Defendants' motion on February 18, 2020, arguing the case should remain in this Court.[10] On March 3, 2020, KLM and Delta filed their reply.[11]

## II.   LEGAL STANDARD

Under the doctrine of *forum non conveniens*, "when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (internal citations omitted). "The

---

[8]   ECF 23; ECF 23-1.

[9]   *Id*.

[10]   ECF 24. Bintu also argues that Defendants are mutually and equally liable, and that the motion to dismiss is procedurally inadequate and untimely. *Id.* He subsequently dropped the latter contentions. ECF 25. The Court does not address Bintu's liability argument because it does not change the *forum non conveniens* analysis.

[11]   ECF 27-1.

doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009) (emphasis added); *see also Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1303 n.4 (11th Cir. 2002) ("*Forum non conveniens* is an ancient common law doctrine that permits a court to decline jurisdiction over a case, even if personal jurisdiction and venue are otherwise proper, when there is a more convenient forum for the case to be litigated.").

A court may decline jurisdiction if "[t]he moving party . . . demonstrate[s] that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). "The *forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft*, 454 U.S. at 257. As a threshold matter, while Bintu's claim arises under the Montréal Convention, the Convention does not preclude the application of *forum non conveniens*. *Pierre-Louis*, 584 F.3d at 1058. Instead, "the purpose of the Convention is adequately safeguarded under traditional *forum non conveniens* analysis. . . .

[F]*orum non conveniens* would permit dismissal under the Convention only if the alternative forum was authorized to hear the case under Article 33(1) or (2) and was demonstrably the more appropriate venue." *Id.*

## III.   DISCUSSION

The Eleventh Circuit has articulated a three-part test for *forum non conveniens* dismissal. The Court must find that: (1) an adequate alternative forum is available, (2) the public and private interest factors weigh in favor of dismissal, and (3) the plaintiff can reinstate the suit in the alternative forum without undue inconvenience or prejudice. *Leon*, 251 F.3d at 1311. Defendants argue that Bintu's claim should be heard in German courts, while Bintu wants the litigation to remain in his chosen forum—this Court.[12]

### a.   The Adequacy and Availability of a German Court

The first requirement in the *forum non conveniens* analysis is whether the moving party can demonstrate that an adequate and available alternative forum exists. *Leon*, 251 F.3d at 1311. Despite their overlapping similarities, "[a]vailability and adequacy warrant separate consideration." *Id.*

---

[12]   ECF 24, at 23.

### i.   Germany Is an Adequate Forum.

"An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009). "An alternative forum is presumed adequate unless the plaintiff makes some showing to the contrary." *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., Ltd.*, 515 F. Supp. 2d 1258, 1268 (M.D. Fla. 2007) (citing *Leon*, 251 F.3d at 1212) (internal citations omitted). "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001). An unfavorable difference in the laws of the home and alternative forum is not sufficient to make the alternative forum inadequate. *Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1320 (N.D. Ga. 2004) ("This standard does not require that the alternative forum provide the exact remedy sought from the domestic court."). The alternative forum is inadequate only if the remedy provided "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254.

Bintu argues that German courts are inadequate because: (1) they have more restrictive discovery processes;[13] (2) he will not be able to compel live testimony

---

[13]   ECF 24, at 23.

beyond his own clinicians;[14] (3) he will need to return to this Court to seek discovery from Delta under 28 U.S.C. § 1782;[15] and (4) he fears that a German court will misapply Georgia law.[16] The Court does not find Bintu's contentions persuasive.

Courts have routinely found that German courts—as well as other civil-law jurisdictions—are adequate fora despite these same concerns. *E.g., Satz*, 244 F.3d at 1283 (holding that Argentine courts are adequate despite plaintiffs' concerns about lack of discovery and fear of delays); *FieldTurf USA Inc. v. TenCate Thiolon Middle East, LLC*, 4:11-cv-50-TWT, 2011 WL 13234176, at *5 (N.D. Ga. Aug. 8, 2011) (finding that Dubai is adequate forum even though its "evidentiary procedures may be less robust than those in federal court"); *Windt v. Qwest Commc'ns Intern., Inc.* 544 F. Supp. 2d 409, 417 (D.N.J. 2008) ("As long as the Dutch legal system provides procedure ample to render a fair decision under the Dutch law, the distinction in the scope of discovery cannot serve as a basis for denial of *forum non conveniens* dismissal.") (emphasis added); *Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 382 (S.D.N.Y. 2006) ("[N]umerous courts have found Germany to

---

[14]   *Id.*

[15]   *Id.*

[16]   *Id.* at 23–24.

be an adequate alternative forum."). While the United States and Germany have dissimilar discovery processes, these differences do not restrict Bintu to "no remedy at all." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009) (citing *Satz*, 244 F.3d at 1283) ("[I]t is only in rare circumstances where the remedy offered by the other forum is clearly unsatisfactory, that the alternative forum may be regarded as inadequate."). Critically, Bintu does not allege that a German court would not recognize his cause of action or otherwise limit his ability to pursue claims and recover damages for his alleged injury.

To the extent Bintu harbors a subjective fear that a German court will misapply Georgia law—assuming Georgia law is applicable (something this Court does not decide)—this concern is conclusory and unavailing. *Lecraw v. Antique Wine Co. (Franchising)*, No. 1:14-cv-01149-RWS, 2015 WL 1277001, at *6 (N.D. Ga. Mar. 19, 2015) ("[T]he Court finds that English courts would serve as an adequate forum even if they were required to apply Georgia law. While it is ideal for a jurisdiction to apply its own law, this factor alone does not render a foreign forum inadequate, for courts are frequently called upon to apply the law of other jurisdictions. Plaintiff does not show that English courts are incompetent to apply Georgia law, and the Court presumes that they could."). At bottom, the Montréal Convention provides Bintu a sufficient remedy, whether this Court or a court in

Germany is the forum.[17] Therefore, a German court is an *adequate* forum for Bintu's claim.

### ii.   Germany Is an Available Forum.

An alternative forum is available "when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon*, 251 F.3d at 1311. "Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947) (internal citations omitted); *see also Lecraw*, 2015 WL 1277001, at *5 (citing *Bautista v. Cruise Ships Catering and Svc. Int'l*, 350 F. Supp. 2d 987, 991 (S.D. Fla. 2004) ("A defendant's submission to the jurisdiction of an alternative forum renders that forum available for the purposes of a *forum non conveniens* analysis.")). Here, Defendants—while not German residents—have expressly stated that they will submit to jurisdiction, and are amenable to process, in Germany.[18] This alleviates any concerns about jurisdiction in Germany.

---

[17]   As discussed below, Germany is a signatory to the Montréal Convention. *See infra* Section III.a.ii.

[18]   ECF 23-1, at 6 (citing ECF 23-2, ¶ 17(c); ECF 23-3, ¶ 11(c)).

The Montréal Convention requires analysis of an additional factor here. Under the Convention, a claim of international carrier liability must (a) be brought in one of the signatory nations and (b) satisfy at least one of the five jurisdictional categories by being: (1) "the domicile of the carrier," (2) the carrier's "principal place of business," (3) a location where the carrier "has a place of business through which the contract has been made," (4) "the place of destination," or (5) the location of the passenger's "principal and permanent residence," so long as the carrier operates service to or from that location and the claim is for damages for the death or injury of a passenger. Montréal Convention Art. 33.1–2; *Pierre-Louis*, 584 F.3d at 1056; *Moulder v. Tryco Int'l, Inc.*, 1:07-cv-2346-CAP, 2010 WL 11602574, at *4 (N.D. Ga. Mar. 17, 2010).

Germany has been a signatory to the Convention since 2004.[19] Here, Bintu's claim seeks damages allegedly suffered as a result of an injury to his knee on flight KL0622, for which the end destination was Germany.[20] Bintu is also a German resident.[21] Finally, both KLM and Delta routinely operate services to and from

---

[19]   ECF 23-4, at 9.

[20]   ECF 1, ¶ 16.

[21]   *Id.* ¶ 1.

Germany.[22] Accordingly, Germany has jurisdiction over Bintu's claim under jurisdictional categories three, four, and five of the Montréal Convention. Germany is therefore an *available* forum.

### b.    Weighing of the Public and Private Interest Factors

The next step in the *forum non conveniens* analysis is to determine whether the public and private factors weigh in favor of dismissal. *Leon*, 251 F.3d at 1311. In *Gulf Oil Corporation v. Gilbert*, the Supreme Court identified these factors. 330 U.S. at 508–09; s*ee also Piper Aircraft*, 454 U.S. at 257; *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1049 (11th Cir. 2019). This Court is required to consider all such relevant factors. *Piper Aircraft*, 454 U.S. at 257.[23]

### i.    Deference to Bintu's Choice of Forum

"The assessment of private factors begins with a determination as to the proper deference to afford the plaintiff's choice of forum." *Kolawole v. Sellers*, 863 F.3d 1361, 1371 (11th Cir. 2017). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."

---

22   ECF 23-2, ¶ 11; ECF 23-3, ¶ 6.

23   While the Eleventh Circuit previously held that public factors should "enter the equation only when the private factors are at or near equipoise," *Leon*, 251 F.3d at 1311, that approach has since been abandoned. *Fresh Results*, 921 F.3d at 1051 ("We now expressly disavow the equipoise standard.").

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007); *see also Kolawole*, 863 F.3d at 1371 (citing *Leon*, 251 F.3d at 1314) ("[T]here is normally a strong presumption that a plaintiff has chosen a convenient forum."). This presumption "weakens" if the plaintiff is not a United States citizen or resident. *Sinochem*, 549 U.S. at 430; *see also Piper Aircraft Co.*, 454 U.S. at 256–57 ("When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."); *Leon*, 251 F.3d at 1315 ("[T]he presumption that a plaintiff has chosen a sufficiently convenient forum 'weakens' when the plaintiff is a foreigner litigating far from home, and in such cases plaintiff's forum choice is accorded less deference.") (citations omitted).

Here, Bintu is a resident of a foreign county and does not allege that he is a U.S. citizen.[24] He has no apparent connection to the United States other than family and occasional travel.[25] Accordingly, Bintu's choice of forum is entitled to only minimal deference. While he is correct that minimal deference is not the same as

---

24   ECF 1, ¶ 1.

25   ECF 24-1, ¶¶ 5, 9.

*no* deference, the burden on Defendants is less than if the claim had been brought by a domestic plaintiff.

### ii.   Private Interest Factors

As articulated by the Supreme Court in *Gulf Oil* and *Piper Aircraft*, the relevant private interest factors are the: (1) relative ease of access to sources of proof; (2) availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) possibility of viewing the relevant premises, if appropriate to the action; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Gulf Oil*, 330 U.S. at 508; *Piper Aircraft*, 454 U.S. at 241 n.6.

The ease of access to sources of evidence is "[p]erhaps the most important private interest of litigants." *Ford v. Brown*, 319 F.3d 1302, 1038 (11th Cir. 2003). In examining this factor, the Court must consider the substance of the dispute to "evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988). Bintu contends that any evidence provided by KLM and Delta could be easily obtained and transported, especially since Defendants are

international transportation companies.[26] Of the likely evidence needed in this matter, Bintu's medical records are located in Germany,[27] records for the flight and incident reports from KLM are located in The Netherlands,[28] and the records of the purchase of the ticket from Delta appear to be located in Georgia.[29] Apart from the ticket purchase records housed in Georgia—a fact Defendants do not contest[30]—the overwhelming volume of evidence is located in Europe. Even though this evidence is not consolidated in one country, its existence outside of Georgia in particular and the United States generally favors dismissal. *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 937 (11th Cir. 2005) (finding that most of the medical records and documentary evidence being located in Italy, Spain, Monaco, and Honduras favored dismissal).

If the matter were to proceed in this Court, there would not only be the need to transmit information currently located in Germany or The Netherlands, but also the likely need to provide certified translations of the information into English. This too points towards dismissal. *Aldana*, 578 F.3d at 1294 (finding that "the need

---

[26]   ECF 24, at 21.

[27]   ECF 23-4, ¶ 4.

[28]   ECF 23-2, ¶ 17(e).

[29]   ECF 23-3, ¶ 1, 4–5.

[30]   ECF 23-2, ¶ 12; ECF 23-3, ¶ 9.

to translate documents, and other linguistic barriers" weighed in favor of *forum non conveniens* dismissal). Producing these sources of proof in the United States would create unnecessary burdens and expenses.

In addition, the currently identifiable witnesses are almost exclusively located in Europe. Defendants have stated that they expect to rely on testimony from the flight and cabin crew, all of whom are KLM employees located either in The Netherlands or elsewhere in Europe.[31] Further, Bintu's medical providers, located in Germany, may be called to give testimony concerning his injury.[32] As for the passengers seated near Bintu on the flight, they are not relevant to this analysis because this Court cannot assess their whereabouts based on the current record. Additionally, there is no evidence as to whether the KLM flight and cabin crew or Bintu's medical providers are willing to serve as witnesses at this early juncture. For those who are willing, there would be high costs to obtaining their testimony for a trial in this Court. This is yet another reason in favor of *forum non*

---

[31]   ECF 23-2, ¶ 17(f); ECF 23-3, ¶ 11(e).

[32]   ECF 23-1, at 27. Even with Bintu claiming that he will see a doctor in the United States if the matter proceeds in this Court, his medical providers in Germany may still be relevant because they examined Bintu immediately after the injury, conducted the surgery, and oversaw his physical therapy. Any American medical provider Bintu were to consult at this stage would only be able to testify about the state of Bintu's knee long after the incident.

*conveniens* dismissal. *Sibaja v. Dow Chem. Co.*, 757 F.2d 1215, 1217 n.5 (11th Cir. 1985) (finding that most of the witnesses being located in Costa Rica favored dismissal).

In addition, some witnesses may be unwilling to voluntarily provide evidence. It is unlikely such witnesses would be subject to the Court's compulsory process. This also weighs in favor of dismissal. *Kolawole*, 863 F.3d at 1372 (finding that the inability to compel the cooperation of non-party Nigerian witnesses favors dismissal).

Finally, Bintu points to the potential for him to incur greater expense if he has to pursue his claim in Germany, because it bars contingent fee arrangements.[33] However, the inability to enter this type of fee agreement does not alter the *forum non conveniens* analysis. *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996). "If the lack of a contingent fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most forums." *Coakes v. Arabian Am. Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987).

---

[33]   ECF 24, at 29.

Based on an analysis of the private interest factors, the Court finds that a majority of the evidence and witnesses are spread across Europe and the transmission, travel, and associated costs required to litigate in this Court are much more burdensome than they would likely be in a German court. Accordingly, the private interest factors favor dismissal under the *forum non conveniens* analysis.

### *iii.* **Public Interest Factors**

Relevant public interest factors include consideration of the: (1) administrative difficulties for courts when litigation is piled up in congested centers instead of being handled at its origin; (2) burden jury duty poses on the people of a community that has no relationship to the litigation; (3) interest of holding the trial in the view and reach of the people touched by the case, rather than forcing them to learn of it by report only; (4) local interest in having localized controversies decided at home; and (5) appropriateness in having a trial of a diversity case in a forum that is at home with the law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself. *Gulf Oil*, 330 U.S. at 508–09.

First, "the need to apply foreign law favors dismissal." *Piper Aircraft*, 454 U.S. at 260 n.29. But, while this is an "important factor," it is not dispositive. *SME*

*Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1105 (11th Cir. 2004). The Montréal Convention exclusively governs the issue of liability for personal injury claims occurring while onboard an aircraft during an international flight. *Omolu v. Delta Air Lines, Inc.*, 2013 WL 12061846, at *3 (N.D. Ga. June 26, 2013) ("The Montreal Convention, like the Warsaw Convention before it, preempts passenger claims that fall within its scope."). For purposes of Defendants' *forum non conveniens* motion, there is little doubt that Bintu's claim arises under the Montréal Convention. As a matter of international law, German courts are as equally competent to adjudicate the issue of liability under that Convention as this Court.[34]

However, the Montréal Convention provides only a basic framework rather than the entire body of substantive law needed to adjudicate Bintu's claim. Certain questions not addressed in the Convention, such as those relating to compensatory damages and procedure, are governed instead by the applicable domestic law. *Zicherman v. Korean Airlines*, 516 U.S. 217, 225 (1996) ("[Q]uestions of who may recover, and what compensatory damages they may receive . . . were unresolved by the Convention and left to private international law—*i.e.*, to the area of

---

[34]   *See supra* Section III.a.ii.

jurisprudence we call conflict of laws, dealing with the application of varying domestic laws to disputes that have an interstate or international component.") (internal punctuation omitted);[35] *see also* Montréal Convention Art. 33.4 ("Questions of procedure shall be governed by the law of the court seized of the case."). Thus, the domestic law that may apply to Bintu's claim is still relevant to this analysis.

The parties focus on the language of Delta's International Conditions of Carriage (the "Conditions"), which provided the contract terms between Delta and Bintu for the purchase of his flight ticket. Bintu points to Rule 26 of the Conditions, which states in part:

> Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by and enforced in accordance with the laws of the United States of America and, to the extent not preempted by Federal law, the laws of the State of Georgia without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted . . . . These Conditions of Carriage are applicable except to the extent that they are contrary to applicable laws, government regulations, or orders, in which event the contrary law, regulation or order shall prevail. If any provision of these Conditions of Carriage

---

[35] *Zicherman* addressed the Warsaw Convention, the predecessor to the Montréal Convention, but has been used as precedent "that guides our interpretation of the Montreal Convention." *Doe v. Etihad Airways, P.J.S.C.*, 870 F.3d 406, 435 (6th Cir. 2017) (citations omitted).

is invalid under any applicable law, the other provisions
remain valid.[36]

In turn, Defendants focus on Rule 18(B) of the Conditions:

> 1) The Carrier shall be liable under Article 17 of the
> Warsaw Convention or Montreal Convention, whichever
> may apply, for recoverable compensatory damages
> sustained in the case of death or bodily injury of a
> passenger, as provided in the following paragraphs:
>
> . . . .
>
>> e) The Carrier agrees that, subject to applicable law,
>> recoverable compensatory damages for such claims
>> may be determined by reference to the laws of the
>> country of the domicile or the country of permanent
>> residence of the passenger.[37]

Under Rule 26 of the Conditions, the phrase "matters arising out of or relating to

this Contract of Carriage and/or the subject matter hereof" appears to relate to

claims concerning the Contract of Carriage itself. On the other hand, Rule 18(B)

explicitly pertains to personal injury claims arising from the Montréal Convention.

Accordingly, Defendants have the better argument here and Rule 18(B)(1)(e)

provides the operative language for the choice of law governing Bintu's claim. As

---

[36]   ECF 24-3, Rule 26.

[37]   *Id.*

a result, German law likely controls Bintu's compensatory damages claim—a factor that favors dismissal.[38]

A second important public interest consideration is a forum's "interests in deciding the dispute." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 953 (11th Cir. 1997). Based on the record, it appears that Germany, The Netherlands, and Georgia all have some potential interest in this case. For example, a forum has an interest when its citizen is the alleged victim. *Piper*

---

[38] Georgia's choice of law rules likewise point to the application of German law to Bintu's claims. "When a federal court decides a state law claim, whether acting pursuant to diversity or supplemental jurisdiction, it applies choice-of-law rules of the jurisdiction in which it sits." *ILCO Site Remediation Grp. v. Taracorp, Inc.*, No. 1:12-cv-00238-WSD, 2014 WL 3427526, at *3 (N.D. Ga. July 10, 2014) (citing *Trumpet Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996)). Georgia follows the doctrine of *lex loci delicti* in tort cases, meaning "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 809 (2005). "The place where the tort was committed, or, the *locus delicti*, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750–51 (2013) (*citing Risdon Enter., Inc. v. Colemill Enter., Inc.*, 172 Ga. App. 902, 903 (1984)). Since Bintu is a resident of Germany, he most acutely suffered his alleged injuries in that country; this fact would point to the application of German substantive law to his claim. While not dispositive, this factor also favors the dismissal of this action. *SME Racks*, 382 F.3d at 1104–05 ("[W]hile the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight.").

*Aircraft*, 454 U.S. at 244 (finding that Scotland had a substantial interest in the outcome of litigation where, *inter alia*, the real parties in interest, as well as all the decedents, were citizens of Scotland). As such, Germany likely has a substantial interest in providing Bintu an avenue to seek redress for his injuries.[39] Additionally, Germany has an interest protecting its own residents who conduct business there—including purchasing an airline ticket and seeking medical attention. Germany was also Bintu's final destination on the roundtrip flight.[40]

On the other hand, a forum also has an interest in a litigation when its citizen is the defendant. KLM is headquartered and incorporated in The Netherlands.[41] Amsterdam was also the intermediate destination of flight KL0662.[42] Finally, Georgia has an interest because Delta's headquarters is located in Atlanta and flight KL0662 departed from the Hartsfield-Jackson Atlanta International Airport.[43] Notably, the Court cannot on this record determine the precise geographic location where Bintu's alleged injury took place because it is unclear

---

[39]   Although the Complaint alleges that Bintu is a resident of Germany, it does not indicate the nation of which he is a citizen. ECF 1, ¶ 1.

[40]   ECF 1, ¶ 8; ECF 23-2, ¶ 11; ECF 23-3, ¶ 6.

[41]   ECF 23-2, ¶ 3.

[42]   ECF 1, ¶ 8; ECF 23-2, ¶ 14; ECF 23-3, ¶ 6.

[43]   ECF 1, ¶ 2, 8; ECF 23-2, ¶ 14; ECF 23-3, ¶ 6.

what state, country, or ocean the plane was crossing when the cart struck his knee.[44]

Based on the above, while the interests of the potential fora are near equipoise, the Court finds that Germany likely has the greatest interest in deciding Bintu's claim. The fact that The Netherlands also has an interest does not disfavor *forum non conveniens* dismissal. *Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1326 (N.D. Ga. 2004) ("[A]lthough the present controversy clearly is not 'localized' in the United Kingdom or Greece, these European courts, with greater claims to jurisdiction over the action, provide more appropriate fora for its resolution.").

---

[44] The parties dispute the precise location. Defendants provide the affidavits of Karin Schiltmeijer and Valija Fomin (employees of KLM and Delta, respectively), who assert that the accident occurred outside of the United States. [ECF 23-2, ¶ 17(j); ECF 23-3, ¶ 11(f).] Bintu claims that the incident occurred roughly two hours into the flight, which he believes means it took place in United States air space. [ECF 24, at 6; ECF 24-1, ¶ 12.] Bintu's opposition to Defendants' motion to dismiss attaches a document he claims shows the typical flight path from Atlanta to Amsterdam, reflecting a route along the eastern seaboard of the United States and into Canadian airspace before then crossing the Atlantic Ocean. [ECF 24-4; ECF 24-6.] The Court does not find Bintu's evidence persuasive, particularly in light of the fact that the document does not purport to show the actual path that flight KL0622 traversed. At bottom, the Court is unable to determine the location of the plane at the precise time Bintu allegedly suffered his injury. Even assuming, however, that the injury occurred in the United States, this would only represent a small factor potentially weighing against a *forum non conveniens* dismissal in the face of overwhelming factors supporting the dismissal.

As a third factor, an evaluation of the burdens on the Court and the community show that this litigation will require a moderate amount of judicial resources for a claim where there is only a potentially modest local interest. Bintu is willing to waive his right to a jury trial and consent to a trial by a U.S. magistrate judge.[45] Courts have previously considered the lack of a jury trial in weighing the administrative burden factor in a *forum non conveniens* analysis. *SRS, Inc. v. Airflex Indus., Inc.*, 2008 WL 4792687, at *6 (D.N.J. Oct. 31, 2008) ("In any event, the lack of a jury trial would, at most, render the factor neutral."). However, this benefit would only be realized if both Defendants also consent to trial by a magistrate judge. 28 U.S.C. § 636(c)(1) (allowing U.S. magistrate judge to conduct any or all proceedings in a non-jury civil matter and order the entry of judgment in the case only upon receiving the consent of all parties). Even if KLM and Delta consented, the magistrate judge would still be required to expend resources to adjudicate a claim where Georgia has only a moderate interest. Additionally, with discovery involving German and Dutch speaking witnesses, and documents located in Europe, the Court would be required to spend a significant amount of time adjudicating the matter compared to matters where the evidence is located in

---

[45]   ECF 24, at 7.

Georgia and testimony does not need to be translated. *In re W. Caribbean Airways*, 2007 WL 9706065, at *7 (S.D. Fla. Nov. 13, 2007) ("It is the court's experience that live testimony given in a foreign language demands significantly more time from the Court given that the questions and answers need to be translated, and often times repeated."). While waiving a jury trial reduces the burden, the additional time and resources needed to conduct a bench trial would still pose an administrative difficulty on the Court. As a result, this favors dismissal.

Bintu further claims that judicial resources will be spent on this matter even if the case is filed in Germany. He states that he would need to return to this Court to obtain a subpoena under 28 U.S.C. § 1782 for discovery from Delta.[46] This assertion is speculative at this juncture and assumes that Delta would not be willing to provide discovery absent a subpoena or that necessary discovery cannot be obtained from KLM. Nevertheless, a proceeding under 28 U.S.C. § 1782(a) does not generally require the same time and resources as shepherding a case through discovery, pretrial motions, and trial. While this Court may need to expend resources regardless of where the case is ultimately adjudicated, the potential

---

[46]   ECF 24, at 23.

administrative burden caused by a proceeding under 28 U.S.C. § 1782 is not enough to offset the burden of handling the entire litigation.

Therefore, based on the above, the public interest factors weigh in favor of dismissal.

### c.     Bintu's Ability to Reinstate His Suit in Germany

The final element of the analysis under the doctrine of *forum non conveniens* is whether the plaintiff can reinstate the lawsuit in the alternative forum without undue inconvenience or prejudice. *Leon*, 251 F.3d at 1311. This factor was not addressed by the parties. However, there is nothing in the record indicating that Bintu would be unable to reassert his claim in a German court if this Court grants Defendants' motion. In fact, KLM and Delta have offered to submit to the jurisdiction of the German courts, accept service in Germany, and waive any statute of limitations defenses if Bintu were to refile the case there.[47] Therefore, this element of the *forum non conveniens* analysis is satisfied.

## IV.    CONCLUSION

Defendants' Motion to Dismiss [ECF 23] is **GRANTED**. Bintu's Complaint is **DISMISSED WITHOUT PREJUDICE** based on *forum non conveniens* in favor of Germany. This Order makes no factual findings as to Bintu's allegations or any

---

[47]   ECF 23-4, ¶ 8.

legal conclusions about the potential liability of either KLM or Delta.[48] The Clerk is **DIRECTED** to close this case.

  **SO ORDERED** this the 12th day of June 2020.

                Steven D. Grimberg
             United States District Court Judge

---

[48] The Court also notes that KLM and Delta's express consent to jurisdiction and service of process in Germany, as well as the waiver of any statute of limitations defense, is an essential part of this Order. The Court emphasizes that its Order is focused on the convenience of the parties and without prejudice. This Order is not an avenue for KLM or Delta to foreclose Bintu's claims or escape any potential liability. In the event either KLM or Delta materially change their litigation positions and contest these waived defenses in a German court, Bintu may refile his case and seek redress in this Court.